UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DONOVAN and | * | |
| CLAIRE DONOVAN, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 1:22-cv-11462-IT |
| | * | |
| DOMINICK PANGALLO, | * | |
| In his official capacity | * | |
| as Mayor of Salem, Massachusetts, | * | |
| | * | |
| Defendant. | * | |
| | * | |

MEMORANDUM & ORDER

October 20, 2023

TALWANI, D.J.

Pending before the court is Defendant's Motion for Judgment on the Pleadings (the "Motion") [Doc. No. 17]. The Motion [Doc. No. 17] is GRANTED in part and DENIED in part for the reasons set forth herein.

I.      Procedural Background

Plaintiffs Shawn and Claire Donovan sued Kimberly Driscoll, then the Mayor of Salem, Massachusetts, in her individual and official capacities in the Superior Court of Essex County, Massachusetts, on September 1, 2022. See Verified Compl. [Doc. No 1-3]. Plaintiffs asserted due process and equal protection violations under both the United States and Massachusetts Constitutions (Count One), negligence (Count Two), emotional distress (Count Three), detrimental reliance or promissory estoppel (Count Four), invasion of privacy (Count Five), private nuisance (Count Six), and violation of M.G.L. c. 93A (Count Seven). Id. at ¶¶ 10-33.

Driscoll timely removed the action to this court, asserting federal question jurisdiction. Notice of Removal [Doc. No. 1]. Driscoll filed an Answer [Doc. No. 7], Amended Answer [Doc.

No. 9], and the instant <u>Motion for Judgment on the Pleadings</u> [Doc. No. 17]. At the hearing on

the motion, the court substituted current Mayor Dominick Pangallo in his official capacity for

former mayor Kimberly Driscoll in her official capacity pursuant to Federal Rule of Civil

Procedure 25(d). Counsel for the Donovans conceded that no claims were stated against Driscoll

in her individual capacity, and the court accordingly dismissed all claims against Driscoll.

Counsel for the Donovans also conceded that the 93A claim failed.

Following the hearing, Defendant's counsel, with the Donovans' consent, entered a copy

of the <u>City of Salem, Massachusetts Board of Appeal Zoning Decision</u> ("Variance Decision")

[Doc. No. 29]. Plaintiffs in turn filed a copy of the <u>Salem Zoning Ordinance, Supplementary</u>

<u>Regulations, Section 7-3</u> [Doc. No. 30].

II.     **Factual Background as Alleged in the Verified Complaint and Set Forth in the**
        **2008 Variance Decision**

The Donovans own a commercial property located at 215 Derby Street in Salem,

Massachusetts (the "Property"). Verified Compl. ¶ 1 [Doc. No. 1-3]. In 2008, the Donovans

applied for a variance from the city's off-street parking regulations. <u>Id.</u> at ¶ 5. The regulations

require off-street parking spaces and provide in relevant part that "[i]n no case shall parking lots

be designed to require or encourage cars to back into a public or private way in order to leave the

lot"; the surfaced area of a parking lot shall be set back a minimum of two feet from all lot lines;

and each parking area shall contain not less than 300 square feet of gross area for each parked

vehicle and 170 square feet of area per parking stall. Salem Zoning Ordinance, Supplementary

Regulations, Section 7-3(e)(5)a, (5)b, (g) [Doc. No. 30]. The requested variance provided that

"[v]ehicles will back into a public way to leave the lot"; "[t]he surfaced parking area does not

provide 2' setback from property lines or street lines"; and "the parking area does not provide the

required 300 sq. ft. per parking space" but that "190 sq. ft. per space is provided." Variance

Decision 3 [Doc. No. 29].  On November 3, 2008, after a hearing, the City of Salem Zoning

Board of Appeals granted the Donovans' request.[1] Id. at 1-2. The Board also stated that no more

than five parking spaces would be allowed. Id. at 2.

 Since 2008, the Donovans, their employees, and their tenants have used the five parking

spots on the Property for parking vehicles during part of the fall and winter months. Verified

Compl. ¶ 6.

In approximately November 2020, the Donovans noticed that parking meters had been

installed on the sidewalk in front of the Property, blocking vehicular access to the parking spots

on the Property. Id. at ¶ 7. The City of Salem did not notify the Donovans that the meters were

going to be installed, provide any opportunity to object, or respond to the Donovans' requests for

relief. Id. at ¶ 8-9.

### III.     Legal Standards

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). Where "a motion for judgment on the

pleadings 'is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as

if it were a motion to dismiss[.]'" Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012).

When evaluating motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the

plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal

under Rule 12(b)(6), a complaint must contain sufficient factual material to "state a claim to

---

[1] In their Verified Complaint, the Donovans report this date as November 8, 2008. Verified
Compl. ¶ 5 [Doc. No. 1-3]. However, this discrepancy does not affect the outcome of the court's
decision on the Defendant's Motion.

relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative

level[.]" <u>Id.</u> at 545 (internal citations omitted). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In addition, "an

adequate complaint must include not only a plausible claim but also a plausible defendant."

<u>Peñalbert-Rosa v. Fortuño-Burset</u>, 631 F.3d 592, 594 (1st Cir. 2011).

## IV.    Discussion

### A. *The Donovans' Tort Claims*

Defendant asserts that the Donovans' claims are barred by the doctrine of sovereign

immunity. Def.'s Mem. 4-7 [Doc. No. 18]. "Massachusetts municipalities historically have

enjoyed sovereign immunity shielding them from liability for the tortious acts of their officers or

employees. But municipalities are creatures of the state, and the state legislature has the right to

strip away municipal immunity in whole or in part." <u>Bennett v. City of Holyoke</u>, 362 F.3d 1, 12

(1st Cir. 2004) (internal citations omitted). The Massachusetts Tort Claims Act ("MTCA"),

M.G.L. c. 258, § 1, <u>et seq.</u>, provides a limited waiver of sovereign immunity for claims for injury

caused by the "negligent or wrongful act or omission of any public employee while acting within

the scope of his office or employment[.]" M.G.L. c. 258, § 2. The MTCA, however, includes

exceptions for, among others, public employees performing discretionary functions, § 10(b), for

intentional torts, § 10(c), and for "any claim based on the issuance, denial, suspension or

revocation…[of] any permit, license, certificate, approval, order or similar authorization,"

4

§ 10(e). Defendant argues that the Donovans' claims fall within these exceptions to the MTCA's

waiver of sovereign immunity. Def.'s Mem. 4-7 [Doc. No. 18]; see M.G.L. c. 258, § 10.

        1.   *Section 10(c) Bars Intentional Tort Claims*

Defendant argues that Count III (emotional distress), Count V (invasion of privacy), and

Count VI (private nuisance) are barred by sovereign immunity as intentional torts. Def.'s Mem. 7

[Doc. No. 18]. The MTCA excludes intentional torts from its waiver of sovereign immunity.

M.G.L. c. 258, § 10(c). The Donovans concede that these Counts are barred from suit by an

exception to the waiver of sovereign immunity. Pl.'s Mem. 4 [Doc. No. 21]. Accordingly, the

motion is granted as to these three claims.

        2.   *Section 10(e) Bars Tort Claims Based on the Actual Revocation of the*
            *Variance*

Defendant argues that the Donovans' tort claims are also barred by § 10(e) because they

are based on the "issuance, denial, suspension or revocation…[of] any permit, license,

certificate, approval, order or similar authorization," specifically the variance that the city

granted in 2008. Def.'s Mem. 6-7 [Doc. No. 18]; M.G.L. c. 258 § 10(e).

To the extent that the Donovans' claim is based on a decision by the city to revoke the

variance, Defendant is correct. The MTCA does not waive sovereign immunity for the

Donovans' tort claims for any such claim.[2]

---

[2] Even if this were not the case, the Donovans' claim for detrimental reliance/promissory estoppel (Count Four) would still fail. Such a claim requires "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Anzalone v. Admin. Off. of Trial Ct., 457 Mass. 647, 661, 932 N.E.2d 774 (2010). It also requires that plaintiff has "reasonably relied on an unambiguous promise." Upton v. JWP Businessland, 425 Mass. 756, 760, 682 N.E.2d 1357 (1997). The Donovans have made no such allegation. The only promise arguably alleged was that the Zoning Board of Appeals promised to grant the variance in its November 2008 order. Verified Compl.

3.   *The Section 10(b) Discretionary Function Exception Does Not Bar a Negligence Claim Based on the Town's Installation of Parking Meters*

Defendant also claims that determining where parking meters should be installed is a discretionary function that falls under the exception in § 10(b). Def.'s Mem. 4-6 [Doc. No. 18]; M.G.L. c. 258, § 10(b). Under the MTCA, municipalities are immune from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his [or her] office or employment, whether or not the discretion involved is abused[.]" M.G.L. c. 258, § 10(b).

"The discretionary function exception is narrow, providing immunity only for discretionary conduct that involves policy making or planning. Deciding whether particular discretionary acts involve policy making or planning depends on the specific facts of each case." Greenwood v. Town of Easton, 444 Mass. 467, 470, 828 N.E.2d 945 (2005) (internal quotations and citations omitted). "This exclusion is designed to immunize policymaking or planning, as opposed to operational actions." Doe v. Dennis-Yarmouth Reg'l Sch. Dist., 578 F. Supp. 3d 164, 174–75 (D. Mass. 2022).

The discretionary function exception is a two-pronged inquiry. First, the court must "determine whether the governmental actor had any discretion . . . to do or not to do what the plaintiff claims caused [the] harm." Harry Stoller & Co. v. City of Lowell, 412 Mass. 139, 141, 587 N.E.2d 780 (1992). If a statute, regulation, or agency practice has predetermined how the city must make a decision, then the governmental actor does not have discretion in the first

---

¶ 5 [Doc. No. 1-3]. But, according to the Donovans, that promise was fulfilled. Id. at ¶ 6. They therefore fail to state a claim for promissory estoppel upon which relief can be granted.

instance. Ku v. Town of Framingham, 62 Mass. App. Ct. 271, 276, 816 N.E.2d 170, 175 (Mass. App. Ct. 2004); Walenty v. Town of Mendon, 55 Mass. App. Ct. 914, 915, 774 N.E.2d 164 (Mass. App. Ct. 2002) (where municipal regulation dictated streetlight location, government actors did not have protection under discretionary function exception for related actions).

Second, if a statute, regulation or agency practice has not predetermined a decision, the court must still "determine whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability." Harry Stoller & Co., 412 Mass. at 141. That is, as a general matter, if the discretionary act rests on planning and policymaking, there is immunity; however, if the act involves the implementation and execution of governmental policy or planning, there is no immunity. Greenwood, 44 Mass. at 470. "Only those decisions which involve social, political, or economic policy considerations are immunized from tort liability by § 10(b)." Doe v. Bradshaw, 203 F. Supp. 3d 168, 187 (D. Mass. 2016) (internal quotations omitted).

The discretionary function exception would apply here if the installation of parking meters in front of the Donovans' property was in accordance with a "plan or policy" (a decision to install parking meters in the locations in question). The discretionary function exception would not apply, however, if the installation was simply the result of an error unrelated to any practice or plan. Here, the Donovans contend that the installation of parking meters blocking access to their property was a result of a failure to follow a plan (e.g., a plan to install parking meters in locations that would *not* block access to private property), or alternatively, a failure to implement a plan at all. Consequently, the Donovans have plausibly alleged that the town's conduct with respect to parking meter installation was outside the scope of the discretionary

function exception. Thus, the court proceeds to consider the Donovans' negligence claim (the only remaining tort claim) related to that conduct.

Under Massachusetts negligence law, "a plaintiff must show by a preponderance of the evidence (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." Primus v. Galgano, 329 F.3d 236, 241 (1st Cir. 2003) (internal quotations and citations omitted). In their Verified Complaint [Doc. No. 1-3], the Donovans assert that Defendant was negligent in the mistaken installation of parking meters in front of the Donovans' parking stalls. Id. at ¶ 13. As discussed above, the court finds that the Donovans have plausibly alleged a negligent failure to follow an approved plan, causing them damage or injury.

### B. *Count One – Federal Constitutional Claims*

#### 1. *Procedural Due Process*

"In order to establish a procedural due process claim under § 1983, [plaintiff] must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). The Donovans argue that the issuance of the variance created a property interest in access to the area, Pl.'s Mem. 4 [Doc. No. 21], and allege that Defendant obstructed access to the Variance without notice or an opportunity to object, Verified Compl. ¶¶ 7-8 [Doc. No. 1-3].

Defendant claims that the Donovans cannot establish a property interest in parking on the public street in front of their property. Def.'s Mem. 8 [Doc. No. 18]. This misstates the property interest that the Donovans assert. The Donovans allege a property interest granted by the variance allowing them to use a portion of their property for off-street parking with direct access

from the street. See Verified Compl. ¶¶ 5-6 [Doc. No. 1-3]. They argue that Defendant

obstructed access to the part of the property subject to a variance, thereby depriving the

Donovans of this property interest. Pl.'s Mem. 4-5 [Doc. No. 21].

"Property interests, of course, are not created by the Constitution. Rather they are created

and their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law[.]" Bd. of Regents of State Colls. v. Roth, 408 U.S. 564,

577 (1972). In Massachusetts, property owners "have a legally protected property interest in their

land, such that an action by the [Zoning Board of Appeals] regarding the use of that land would

significantly affect their property." Cappuccio v. Zoning Bd. of Appeals of Spencer, 398 Mass.

304, 312 n.10, 496 N.E.2d 646 (1986).

"At the motion to dismiss stage, however, '[t]he plaintiff is not obligated … to fully plead

the law providing them a property interest; they only have to plead facts that would give their

claim of a property interest sufficient plausibility.'" Higgins v. Town of Concord, 246 F. Supp.

3d 502, 513 (D. Mass. 2017) (quoting Vázquez-Velázquez v. P.R. Highway & Transp. Auth.,

2016 WL 183653, at *5 (D.P.R. Jan. 14, 2016). The Donovans allege facts that plausibly support

a property interest in use of the Variance—that the city granted a variance for off-street parking

and that the Donovans relied on the Variance for themselves, their employees, and their tenants.

Verified Compl. ¶¶ 5-6 [Doc. No. 1-3]. Importantly, the Variance includes an exemption from

the local ordinance Section 7-3 5(a), thus permitting vehicles parked in the five parking spaces to

"back into a public way to leave the lot." Variance Decision 3 [Doc. No. 29]. Where the

Donovans allege that Defendant obstructed the ability of vehicles parked on their property to

"back into a public way to leave the lot" without offering the Donovans notice or an opportunity

to object, they have plausibly alleged a deprivation of their property interest.

Defendant argues, in the alternative, that even if he violated the Donovans' constitutional rights, the rights were not clearly established, and he is therefore entitled to qualified immunity. Def.'s Mem. 10 [Doc. No. 18]. However, a qualified immunity defense is not available for a claim seeking injunctive relief. Pearson v. Callahan, 555 U.S. 223, 242-43 (2009); see County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). The Donovans' claim for prospective injunctive relief, Verified Compl. ¶ E [Doc. No. 1-3], to remedy an alleged procedural due process violation, id. at ¶¶ 10-11, may therefore proceed.[3]

### 2. *Substantive Due Process*

To the extent that the Donovans claim a substantive due process violation, the claim must fail. To succeed on a substantive due process claim challenging executive action, the Donovans must show that Defendant deprived them of a property interest and that the deprivation shocked the conscience or was outrageous. Martínez v. Cui, 608 F.3d 54, 63-64 (1st Cir. 2010). The Donovans' Verified Complaint [Doc. No. 1-3] does not plausibly allege that the installation of parking meters in this instance shocks the conscience. To the extent that the Donovans' claims allege a violation of substantive due process, the claims must be dismissed.

---

[3] The Donovans have not sufficiently stated a claim for monetary relief against Defendant in his official capacity. Even if they had, qualified immunity would bar the claims. The Verified Complaint [Doc. No. 1-3] contains facts that plausibly allege a property interest in the variance and deprivation of that right without procedural due process. However, the Donovans have not met their burden of "identify[ing] either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). Defendant's qualified immunity defense would therefore succeed as to the Donovans' claims for monetary damages.

3. *Equal Protection*

The Donovans' equal protection claim is similarly unsupported. The <u>Verified Complaint</u> [Doc. No. 1-3] does not allege that the Donovans were denied the equal protection of the laws based on a protected class. The Donovans' claim that Defendant deprived them of equal protection under the laws must also be dismissed.

**V.      Conclusion**

For the foregoing reasons, Defendant's <u>Motion for Judgment on the Pleadings</u> [Doc. No. 17] is GRANTED in part and DENIED in part. The <u>Motion</u> [Doc. No. 17] is denied as to Donovans' negligence claim (to the extent that it is not based on a decision subject to the discretionary function exception) and as to the Donovans' claim for prospective injunctive relief to remedy an alleged procedural due process violation. The <u>Motion</u> [Doc. No. 17] is granted as to all other claims.

IT IS SO ORDERED

October 20, 2023                                            /s/      Indira Talwani
                                                                      United States District Judge